UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RECTANGLE MEDICAL DENTAL
PAYMENTS, LLC, et al.,

                      Plaintiffs,                              **ORDER**

        -against-                               21 Civ. 3378 (CS) (PED)

RETRIEVER MEDICAL/DENTAL
PAYMENTS LLC, et al.,

                      Defendants.
-------------------------------------------------------X

      Presently before this Court is the parties' discovery dispute stemming from plaintiffs' desire to obtain defendant Retriever's documents and communications from 2018, prior to the parties' execution of the ISO Agreement. Dkt. #73, #78, #91, #92.[1] Familiarity with the record is presumed.

      At the heart of the dispute is defendant's affirmative defense based upon Section 4.6 of the ISO Agreement, which states, in relevant part: "In no event will any party be liable for any special, incidental consequential or punitive damages of any nature or for any reason whatsoever regardless of the form or action, whether in contract, tort, or otherwise even if advised of that possibility." Dkt. #25-3, at 12 (ECF pagination). Plaintiffs contend that Section 4.6 is unenforceable as a matter of public policy due to defendant's intentional wrongdoing and bad faith. Thus, plaintiffs seek discovery to establish their contention that, at the time the parties negotiated the ISO Agreement, defendant anticipated breaching that agreement.

---

[1] On January 27, 2023, the Court held a Discovery Hearing for the purpose of addressing multiple discovery disputes. The bulk of the disputes were resolved via rulings on the record; I requested additional briefing addressing the remaining issue which is now before the Court. *See* Minute Entry, 01/27/2023.

In *Kalisch-Jarcho v. City of New York*, 58 N.Y. 2d 377 (1983), the New York Court of Appeals held:

> [A]n exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances. Under announced public policy, it will not apply to exemption of willful or grossly negligent acts. More pointedly, an exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing. This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith. Or, when, as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit. In either event, the policy which condemns such conduct is so firm that even when, in the context of circumstances surrounding the framing of a particular exculpatory clause, it is determined . . . that the conduct sought to be exculpated was within the contemplation of the parties, it will be unenforceable.

*Id.* at 384-85 (citations omitted).[2]

Nine years later, in *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540 (1992), the New York Court of Appeals extended the application of the gross negligence portion of the public policy rule to contract clauses limiting damages to a nominal sum. *Id.* at 554. Specifically, the Court of Appeals held that the clauses in issue (an exculpatory clause and a clause limiting damages to a nominal sum)[3] "cannot restrict [the actor's] liability for conduct evincing a reckless disregard for

---

[2] The exculpatory clause at issue in *Kalisch-Jarcho* stated: "The Contractor agrees to make no claim for damages for delay in the performance of this contract occasioned by any act or omission to act of the City or any of its representatives, and agrees that any such claim shall be fully compensated for by an extension of time to complete performance of the work as provided herein." 58 N.Y.2d at 380.

[3] The exculpatory clause stated that Holmes Protection, Inc. (an alarm monitoring service) "shall not be liable for any of [the property owner's] losses or damages . . . caused by performance or nonperformance of obligations imposed by this contract or by negligent acts or omissions by Holmes." 79 N.Y.2d at 549. The other contract clause at issue limited Holmes's liability "to the lesser of $250 or 10% of the annual service charge as 'liquidated damages.' " *Id.*

its customers' rights. *Id.*

More recently, in *Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d 342 (2020), the New York Court of Appeals considered whether a sole remedy provision (limiting, but not eliminating, the remedies available to plaintiff in the event of a breach) "may be rendered unenforceable by plaintiff's allegations that a breach of contract occurred as a result of gross negligence." *Id.* at 352 (quotation marks omitted). The Court of Appeals held:

> We have previously considered the application of the gross negligence public policy rule only in cases where the contract provision at issue was an exculpatory clause, purporting to wholly immunize a party from liability, or a nominal damages clause limiting damages to, at most, $250. We have not yet determined whether grossly negligent conduct may render unenforceable contractual provisions that do not wholly insulate a party from liability for its breach, but instead impose reasonable limitations on either liability or the remedies available to the non-breaching party. We conclude that, in a breach of contract case, grossly negligent conduct will render unenforceable only exculpatory or nominal damages clauses, and the public policy rule does not extend to limitations on the remedies available to the non-breaching party.

*Id.* at 353 (citations omitted).

Here, defendant correctly notes that Section 4.6 is neither an exculpatory clause nor a clause limiting damages to a nominal sum. Dkt. #92, at 1 (ECF pagination). Thus, according to defendant, plaintiff's pre-ISO Agreement discovery requests are rendered irrelevant by *Matter of Part 60 Put-Back Litig. Id.* Defendant specifically asserts that Section 4.6 "cannot be rendered unenforceable through allegations of gross negligence." *Id.* (citing *Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d at 348-49, 355-57). Plaintiffs, however, do not allege gross negligence; rather, plaintiffs contend that Section 4.6 is unenforceable as a matter of public policy because defendant negotiated the ISO Agreement in bad faith. *Matter of Part 60 Put-Back Litig.* "considered only the public policy exception for gross negligence; it did not discuss the public

policy exception for willful misconduct." *1S Chrystie Mgmt. LLC v. ADP, LLC*, 205 A.D.3d 418, 420, 168 N.Y.S.3d 449, 451 (2022).  Thus, defendant's reliance on *Matter of Part 60 Put-Back Litig.* is misplaced.

Accordingly, I conclude that plaintiffs are entitled to discovery to establish their contention that, at the time the parties negotiated the ISO Agreement, defendant anticipated breaching that agreement.  *See Sussman Sales Co., Inc. v. VWR Int'l, LLC*, No. 20 Civ. 2869, 2021 WL 6065760, at *4-5 (S.D.N.Y. Dec. 21, 2021) (plaintiff allowed to pursue claim for lost profits, despite contractual clause barring consequential damages, because plaintiff alleged facts sufficient to demonstrate that defendant may have acted intentionally and in bad faith).  However, in the interest of proportionality, the time frame applicable to searches targeting this issue shall commence July 1, 2018.

Dated:  February 10, 2023        **SO ORDERED**
       White Plains, New York

_____
PAUL E. DAVISON, U.S.M.J.